NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 16-00582 (SRC) |
| v. | |
| THOMAS V. SAVINO | OPINION & ORDER |

**CHESLER**, District Judge

This matter comes before the Court upon the motion for a new trial filed by Defendant Thomas Savino ("Defendant" or "Savino"). The United States of America (the "Government") has opposed the motion. The Court has considered the written submissions, including the Government's requested sur-reply brief and Defendant's sur-sur-reply brief. The Court has determined that oral argument is not necessary, and for the reasons that follow, the motion will be denied.

**I.    BACKGROUND**

In late 2016, a grand jury charged Defendant with ten counts: one count for conspiracy to violate the federal Anti-Kickback Statute and Travel Act and to defraud patients of honest services, three counts of illegal renumeration in violation of the federal Anti-Kickback Statute, three counts of use of the mail and facilities in interstate commerce and interstate travel to promote, carry on, and facilitate commercial bribery, and three counts of a scheme to defraud patients of honest services by accepting concealed bribes. All of these charges arose out of Defendant's alleged participation with a bribery scheme involving Biodiagnostic Laboratory

1

Services ("BLS"), a clinical blood laboratory headquartered in New Jersey. While many physicians were ultimately convicted for their own involvement in this scheme with BLS, this action only concerns Savino's alleged role. Before he was arrested, Savino operated his own medical practice in a New York office building that he owned. This building also had an additional suite, which Savino claimed he rented out to BLS. However, in 2017, a jury concluded that the money that Savino received from BLS was actually intended to bribe Savino to refer his patients to BLS for blood tests.  After being found guilty at trial by the jury, Savino then appealed to the Third Circuit. However, in September of 2019, the Third Court rejected Savino's arguments and affirmed this Court's judgment and Savino's sentence of 48 months. Subsequently, Defendant filed the present motion for a new trial based on allegedly newly discovered evidence.

## II.   DISCUSSION

Under Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. According to the Third Circuit, a defendant must satisfy the following five requirements before he will be granted a new trial on the basis of newly discovered evidence:

> (a) [T]he evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Cimera, 459 F.4d 452, 458 (3d Cir. 2006). Further, "'the movant has a 'heavy burden' of proving each of these requirements.'" Id. "'If just one of the requirements is not satisfied, a defendant's Rule 33 motion must fail.'" United States v. Napolitan, 762 F.3d 297,

2

305 (3d Cir. 2014) (quoting United States v. Kelly, 539 F.3d 172, 181-82 (3d Cir. 2008)). As such, "[c]ourts should 'exercise great caution in setting aside a verdict reached after fully-conducted proceedings,'" and particularly so where 'the action has been tried before a jury.'" Kelly, 539 F.3d at 182 (quoting United States v. Kamel, 965 F.2d 484, 493 (7th Cir. 1992)).

Before considering the five requirements mentioned by the Third Circuit in Cimera, it is important to first identify the "evidence" at issue. In support of this motion, Savino seems to rely on two pieces of allegedly new "evidence". First, Savino points to the fact that BLS was licensed as a laboratory in New York at the time of his alleged offense, not just in New Jersey. Second, Savino has also introduced an affidavit from Lynn Pugliese, who used to serve as his office manager and who testified as a defense witness at trial. The Court will separately consider whether either of these pieces of "evidence" satisfy the exacting requirements for granting a Rule 33 motion for a new trial.

The first and second requirements that Defendant must meet are that the "evidence" must be newly discovered since the trial and that facts alleged by Defendant allow the court to infer diligence on his part for not discovering the evidence earlier. These two requirements go hand in hand, as "[t]he test to determine whether evidence is 'newly discovered' is both objective and subjective: Evidence is not 'newly discovered' if it 'was [actually] known or could have been known by the diligence of the defendant or his counsel.'" Cimera, 459 F.3d at 461 (quoting United States v. Bujese, 371 F.2d 120, 125 (3d Cir. 1967)). As such, "evidence that a reasonably competent attorney allegedly *would have discovered* by means of pretrial investigation[] cannot constitute the newly discovered evidence on which a Rule 33 motion may be based." United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993) (emphasis in original). See also Kelly, 539

3

F.3d at 182 ("In applying this prong, we have consistently focused our inquiry on whether the evidence at issue could have been discovered before or at the time of trial with the exercise of reasonable diligence on behalf of the defendant and/or his counsel.").

Here, beginning with Defendant's first piece of "evidence," that BLS was licensed in New York, the facts indicate that Defendant had actual knowledge of this fact before his case went to trial. Indeed, the Government has demonstrated that this information was provided to Defendant in pre-trial discovery. More specifically, at the February 2017 trial for another physician involved in BLS's scheme, the owner of BLS testified to the fact that BLS was licensed in New York, and the Government provided Defendant's counsel with a copy of this trial testimony in October of 2017 as part of its Jencks disclosures. See Letter from AUSA Joseph Minish to Defendant's Counsel (October 16, 2017) (Ex. A to Govt.'s Opp'n Br.), at 1. Furthermore, Scott Nicoll, a BLS employee and another Government witness, testified at Defendant's own trial that BLS had a New York license. Trial Tr. vol. 2, at 131.

Additionally, Defendant's own reply brief for this motion indicates that he was, at least at some point, under the impression that BLS was licensed in New York. Multiple times throughout Defendant's reply brief he writes that he believed or understood that BLS was a New York licensed laboratory. See, e.g., Def.'s Reply Br. at 4 ("He [Defendant] believed BLS was operating legally as a New York licensed lab . . . ."); Def.'s Reply Br. at 13 ("He [Defendant] had understood they [BLS] were licensed."); Def.'s Reply Br. at 38-39 ("Defendant is innocent of the charges enumerated in the indictment because he justifiably relied on his knowledge that BLS was operating as New York licensed laboratory at the time it rented an office suite in his building."). While Defendant states in his reply brief numerous times that he had believed that

4

BLS was licensed in New York, he nevertheless claims that, after he was indicted, he then became "aware of the Government's position that BLS was not operating as a New York licensed laboratory." Def.'s Reply Br. at 12. As such, Defendant asserts that, while he "knew BLS was licensed historically, . . . the issue was whether the license was valid at the time period when they [BLS] rented from Defendant." Def.'s Reply Br. at 14. However, this argument by Defendant, that his belief changed once he was charged by the Government, is unpersuasive.

First, as has already been demonstrated by the Government, the Government did not make any assertions that BLS was not licensed in New York at the time it was present in Defendant's office building. Second, even if Defendant misunderstood the Government and believed that the Government thought BLS was not licensed in New York, if the state in which BLS was licensed is truly as important of a factual issue as Defendant paints it to be, then surely he could have investigated the issue more thoroughly, particularly because Defendant claims that he had previously believed that BLS was in fact licensed in New York. Moreover, even if Defendant truly believed at the time of his trial that BLS was not licensed in New York, Defendant has not alleged any facts from which the Court can excuse his lack of diligence for failing to determine that BLS was actually licensed in New York before trial. Thus, for these reasons, it is apparent that the fact that BLS was licensed in New York cannot be considered newly discovered evidence and that, even if Defendant was somehow not actually aware of this information before trial, this unawareness demonstrates a lack of diligence on Defendant's part.

Additionally, the fact that BLS was licensed in New York also does not meet the third and fourth requirements – that the evidence relied upon must not be merely cumulative or impeaching and must be material to the issues involved, as this information is simply cumulative

to what Defendant already presented at trial and is not material. In particular, Defendant's entire defense at trial was that he was allowed to rent his office space to BLS and that he did in fact simply rent his office space to BLS. Now, Defendant has asserted that the Government attempted to demonstrate at trial that he was not allowed to rent to BLS in New York. In support of this claim that the Government misled the Court into believing that it was illegal for Defendant to rent to BLS in New York, Defendant relies on the Government's statement in its closing argument that "the payment, be it rent or be it just a cash bribe, if that's what led to the blood going to BLS, it doesn't matter, that's what the law says." Trial Tr. vol. 6A, at 875. However, Defendant has entirely misunderstood this statement by the Government. The Government was not saying, as Defendant claims, that it was illegal for Defendant to accept a payment from BLS even if it was truly rent and there was no illicit intent. Rather, the Government was simply saying that, even if the payments were characterized as "rent," if those payments were what actually caused Defendant to refer his patients to BLS for blood tests, then Defendant violated the law, as that type of quid pro quo relationship is illegal.[1] For this reason, the fact that BLS was licensed in New York is entirely cumulative because the Government never actually claimed at trial nor made any assertion that it would be illegal to rent office space to BLS or that Defendant was somehow not *allowed* to do so. Rather, the Government's main point at trial was that, while Defendant would have been allowed to rent to BLS, that this was not the case.

---

[1] Defendant also claims that, through this statement in his closing argument, counsel for the Government "chose to instruct the jury . . . that it did not matter whether Dr. Savino knew about any illegal activity or had any intent to commit any wrongful conduct." Def.'s Br. at 17. However, it is important to note that counsel cannot *instruct* the jury – only the judge can do so. Further, even if Defendant simply meant that counsel for the Government included an incorrect statement of the law in its closing argument, as previously explained, this is not the case. Rather, Defendant has misconstrued the Government's argument in its closing statement.

Furthermore, even if under state regulations Defendant was not allowed to rent his office space to BLS, if the jury concluded that BLS's payments to Defendant were really just rent and were not part of a bribery scheme with BLS, then Defendant's actions would not have been criminal and would have only violated a state regulation. Such a violation would not support a criminal conviction – thus, by finding the Defendant to be guilty, the jury clearly concluded that the payments Defendant received from BLS were truly in exchange for his referrals of his patients to BLS for blood tests. As such, the fact that BLS was licensed in New York at the time Defendant rented his office space to them, and that therefore it was not illegal for Defendant to actually rent to them, is cumulative to what was already presented at trial and immaterial. Defendant already attempted to demonstrate at trial that he was allowed to rent to BLS, but the jury nevertheless concluded that this was not actually the case and that Defendant was part of an illicit bribery scheme instead.

Then, as for the fifth requirement, that the evidence must be such that, on a new trial, it would probably produce an acquittal, the fact that BLS was licensed in New York also cannot meet this final requirement. "'[I]t is the job of the district court . . . to decide whether the newly discovered evidence is credible, and, if so, whether it would probably produce an acquittal if a new trial were held.'" Kelly, 539 F.3d at 188 (quoting United States v. Grey Bear, 116 F.3d 349, 350 (8th Cir. 1997)). "[T]he proper standard for making such a determination . . . [is] whether a jury probably would reach a different result upon hearing the new evidence." Id. at 189. Thus, "'[t]he real question . . . [is] how likely the district judge [thinks] a jury at a second trial would be to believe it.'" Id. (quoting Grey Bear, 116 F.3d at 350). "To make a determination under this standard, the district . . . must weigh the [new evidence] against all of the other evidence in the

7

record, including the evidence already weighed and considered by the jury in the defendant's first trial." Id.

Here, even if Defendant were granted a new trial and was given the opportunity to emphasize that BLS was licensed in New York as support for his argument that he was merely renting his office space to BLS, this would not probably produce an acquittal. To the contrary, it this would not have changed the result at trial at all, as there was already a great deal of evidence at Defendant's trial that the "rent" payments he received from BLS were actually intended as bribes for his patient referrals. Indeed, when Defendant appealed his conviction to the Third Circuit, it also concluded that the Government presented facts that "more than suffice[d] to sustain a jury verdict[,] as the "Government presented ample circumstantial evidence that Savino intended to accept bribes from BLS." United States v. Savino, 788 F. App'x 869, 873 (3d Cir. 2019). More specifically, the Third Circuit noted the following facts that strongly cut against finding that Defendant simply rented his office space to BLS:

> Savino allowed BLS to operate a laboratory in his office space without a written agreement in return for cash payments. The lab had no public entrance—patients could access the area where blood was drawn only through Savino's office. In the conversation Antell [a Government informant] recorded, Savino haggled over the payment scheme with a new potential lab, explaining he had "good volume" and could send them certain urine testing "that pays tremendously well." He accepted a cash payment of $1,500 ostensibly from the new lab and offered to split monthly cash payments with Antell if he got the company to do urine testing.

Id. Further, the evidence against Defendant at trial was more than just sufficient, it was overwhelming. For example, the recording of Defendant speaking with a Government witness and informant, Cliff Antell, which the Third Circuit referenced, was particularly devastating to Defendant's case. In that recording, Defendant was heard explaining that he could "get more money" from another lab because he had "good volume." Govt. Trial Ex. 20b, Tr. of 5/14/13

8

Recording, at 3. In that recording, Defendant also kept inquiring whether another lab could do FSH tests, explaining that then perhaps he could "make another deal . . . because that's a big money maker" and that "FSH is the most important because that pays tremendously well." Govt. Trial Ex. 20b, Tr. of 5/14/13 Recording, at 3, 5-6. Moreover, Defendant was also heard saying on the recording that he "didn't make them [another lab] draw everybody's blood like [he] used to." Govt. Trial Ex. 20b, Tr. of 5/14/13 Recording, at 4. As such, the evidence at trial, especially the recording of Defendant with Antell, overwhelmingly demonstrated that the payments Defendant received from BLS were intended as bribes. As such, the fact that BLS was licensed in New York would not probably produce an acquittal, and thus, Defendant's motion for a new trial based on this allegedly newly discovered evidence must fail.

Next, the Court will consider Defendant's second piece of "evidence," the affidavit of his prior office manager and defense witness, Lynn Pugliese, dated April 27, 2021. In examining the affidavit, it is clear that it cannot even be considered evidence at all. Ms. Pugliese's attempts at clarification in this affidavit are largely irrelevant, and some are even flatly contradictory to her testimony at trial.[2] Additionally, while Ms. Pugliese directly contradicts her trial testimony

---

[2] The Court will briefly note some examples of statements in Ms. Pugliese's affidavit that directly contradict her trial testimony. In her affidavit, Ms. Pugliese states that she "was called by the Government to testify as a witness in the criminal trial against Dr. Savino," but she actually testified as a defense witness at trial. Pugliese Aff. (April 27, 2021), at 1 (Ex. A to Def's Reply Br.); Trial Tr. vol. 5, at 695. Ms. Pugliese also states in her affidavit that she had "no idea how many times [BLS] or members of the public went in or out of [BLS's] office through [BLS's] own entrance doors as it was not [her] duty to observe them. . . . [and that she] assume[d] that BLS employees would most likely have unlocked and locked their doors throughout the day" and that she did "not actually know if any of the first three BLS phlebotomists had keys [to BLS's office]." Pugliese Aff. (April 27, 2021), at 4, 8 (Ex. A to Def's Reply Br.). However, during her trial testimony, she testified that the door from which one could enter the BLS area from the outside was locked, was not open to the public, and that only Defendant and his staff had a key. Trial Tr. vol. 5, at 734. Further, in her affidavit, Ms. Pugliese states that she "do[es] not know [it] to be true" that "no non-Savino patient ha[d] his/her blood drawn by BLS[,]" as she "worked in

9

multiple times throughout her affidavit, she has never recanted her trial testimony nor admitted to perjuring herself at trial. As such, this affidavit can in no way support a decision to reevaluate the evidence that was presented to the jury at Defendant's trial and is merely an after the fact effort by Ms. Pugliese to put her own "spin" on her trial testimony. Therefore, because this affidavit cannot even be considered "evidence," the Court need not consider the remaining factors set forth by the Third Circuit and concludes that Defendant's motion for a new trial must also be denied on the basis of this allegedly new evidence.[3]

---

Dr. Savino's office, not in BLS's office" and had "no idea what patients BLS saw in their office" and that she had "no knowledge of BLS's clientele . . . ." Pugliese Aff. (April 27, 2021), at 5 (Ex. A to Def's Reply Br.). Yet, during her trial testimony, Ms. Pugliese testified that no one got their blood drawn in BLS's office other than Savino's patients. Trial Tr. vol. 5, at 736. Moreover, in her affidavit, Ms. Pugliese states that, "after about 5 months from the time BLS moved into their suite . . . Tiffany Scarpa started working for BLS in their suite as a phlebotomist drawing blood for patients . . . ." Pugliese Aff. (April 27, 2021), at 7 (Ex. A to Def's Reply Br.). However, during her trial testimony, Ms. Pugliese stated that Tiffany Scarpa was employed by Savino, not BLS. Trial Tr. vol. 5, at 740. Finally, although in her affidavit Ms. Pugliese claims she "did not 'maintain' leases," during her trial testimony, she testified that she did maintain records of written leases with businesses that rented from Savino, but that she never saw a lease between Savino and BLS. Pugliese Aff. (April 27, 2021), at 9 (Ex. A to Def's Reply Br.); Trial Tr. vol. 5, at 742-43.

[3] Defendant has also raised numerous ancillary arguments that lack merit. For instance, Defendant has claimed that, because BLS was licensed in New York, that this Court was not the proper venue for this case. However, as the Government has demonstrated, enough facts were alleged at trial to support a finding of sufficient contact with New Jersey to establish venue. In particular, BLS itself is a New Jersey company, meaning that Defendant accepted bribes from a New Jersey source, the money that Defendant received originated in New Jersey, and the blood that BLS drew in Defendant's office in New York was ultimately sent to New Jersey, where BLS performed its analyses of all of the blood drawn. Relatedly, Defendant asserts that the Indictment was defective because it inaccurately identified the status of BLS and that therefore Defendant should not have been charged with violating New Jersey laws. However, as with the venue issue, here too, the Government has demonstrated enough of a nexus with New Jersey to support charging Defendant under New Jersey law. Additionally, the Indictment in no way inaccurately identified the licensure status of BLS and was simply silent on that issue. Next, Defendant has also alleged that, with respect to the information that BLS was licensed in New York, the Government violated its duty under Brady v. Maryland, 373 U.S. 83 (1963), which requires the Government to disclose any evidence that is favorable to the defense in a material way. This

**III.   ORDER**

For the reasons discussed, **IT IS** on this 11th day of June 2021, hereby

**ORDERED** that Defendant's motion for leave to file a sur-sur-reply [ECF 108] be and hereby is **TERMINATED**, as Defendant did in fact file a sur-sur-reply which the Court then considered; and it is further

**ORDERED** that Defendant's motion for a new trial [ECF 95] be and hereby is **DENIED**.

 /s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

---

argument necessarily fails, since, as previously explained, the Government did in fact disclose to Defendant in pre-trial discovery that BLS was licensed in New York (and this fact came up during Defendant's own trial as well). Moreover, there also cannot be a Brady violation when the defendant was aware of the supposed exculpatory evidence and, as the Court has previously indicated, Defendant has made it very clear that he was operating under the assumption that BLS was indeed licensed in New York. As such, because this information was not concealed in any way, no Brady violation is present. Then, Defendant has also made certain side arguments that would be best characterized as ineffective assistance of counsel claims, such as the fact that his appellate counsel did not file a reply brief on appeal. Such ineffective assistance of counsel arguments may only be raised in a 28 U.S.C. § 2255 habeas action and cannot be heard here as part of a Rule 33 motion for a new trial. Finally, multiple times throughout his moving papers, Defendant comments on the credibility of one of the Government's witnesses at trial, Cliff Antell. However, any facts that cut against Antell's credibility were disclosed to the jury at trial, and the jury is the sole judge of witness credibility. As such, this type of argument cannot be considered at all by the Court.